UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, | Case No. 1:24-cv-3609 |
| Plaintiff, | |
| v. | Hon. Robert W. Gettleman |
| APEX MANAGEMENT GROUP I, INC. and JEFFREY BEMORAS, | |
| Defendants. | |

| | |
|---|---|
| Elisabeth P. Nolte | D. Andrew Portinga (P55804) |
| Benjamin R. Salk | Brett Swearingen (P85790) |
| U.S. DEPARTMENT OF LABOR | MILLER JOHNSON |
| Office of the Solicitor | 45 Ottawa Avenue SW, Suite 1100 |
| 230 S. Dearborn Street, Room 844 | Grand Rapids, MI 49503 |
| Chicago, Illinois 60604 | (616) 831-1700 |
| (312) 886-5260 | portingaa@millerjohnson.com |
| nolte.elisabeth.p@dol.gov | swearingenb@millerjohnson.com |
| salk.benjamin.r@dol.gov | |
| | David Alan Belofsky |
| *Attorneys for Plaintiff* | DAVID A. BELOFSKY & ASSOCIATES, LTD. |
| | 150 North Michigan Avenue, Suite 1230 |
| | Chicago, Illinois 60601 |
| | (312)759-3737 |
| | david@belofsky.com |
| | |
| | *Attorneys for Defendants* |

# Memorandum in Support of Defendants' Motion to Dismiss Count Three of Plaintiff's Complaint

**Table of Contents**

**Page**

Introduction ........................................................................................................ 1

Summary of Allegations ..................................................................................... 1

Argument ............................................................................................................ 2

      I.     Standard of Review ................................................................................ 2

     II.    Collecting Pre-Negotiated Premiums for Health Coverage
           Is Not a Fiduciary Act. .......................................................................... 3

Conclusion ........................................................................................................... 9

## Table of Authorities

**Page**

**Cases**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570, 584 (7th Cir. 2022),
  *reh'g denied*, No. 21-2789, 2022 WL 4372363
  (7th Cir. 2022) ...................................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .................................... 2

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. VALIC*,
  88 F.4th 602 (5th Cir. 2023),
  *cert. denied*, 144 S. Ct. 2525 (2024) ................................................... 6

*Danza v. Fidelity Mgmt. Tr. Co.*,
  533 F. App'x 120 (3d Cir. 2013) ........................................................... 6

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ...................................................... 1, 5, 6, 7

*Gibson v. City of Chicago*,
  910 F.2d 1510 (7th Cir. 1990) .............................................................. 2

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ............................................................ 3, 8

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ............................................................................... 5

*Larson v. United Healthcare Ins.*,
  723 F.3d 905 (7th Cir. 2013) .............................................................. 4

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ............................................................................... 5

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ........................................................................... 1, 4

*Sacerdote v. N.Y. Univ.*,
  2017 WL 3701482 (S.D.N.Y. 2017) ..................................................... 6

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins.*
*(U.S.A.),*
   768 F.3d 284, 295 (3d Cir. 2014)................................................................................. 7

*Schulist v. Blue Cross of Iowa,*
   717 F.2d 1127 (7th Cir. 1983) ................................................................................. 7

*Sprint Spectrum L.P. v. City of Carmel, Ind.,*
   361 F.3d 998 (7th Cir. 2004) ................................................................................... 2

*Srein v. Soft Drink Workers Union, Loc. 812,*
   93 F.3d 1088 (2d Cir. 1996).................................................................................... 7

*Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir.2002) ...................................................... 3

**Introduction**

To breach ERISA's fiduciary duties, a defendant must be acting in a fiduciary capacity. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). The negotiation of a new health plan's premiums is an arm's-length transaction, not a fiduciary act. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 655 (9th Cir. 2019). Here, the U.S. Department of Labor ("DOL") alleges in Count Three of its Complaint that compensation paid to Apex Management Group I ("Apex") is excessive and was undisclosed. But the premiums paid for Apex's health plans were negotiated at arm's length and before any ERISA plan was created. Because Apex did not act as a fiduciary in the creation of any health plans or in the negotiations of premiums for those plans, Count Three should be dismissed.

**Summary of Allegations**

Because this motion is brought under Rule 12, we accept DOL's allegations as true, for the purposes of this motion only.

Apex creates and sells "Minimum Essential Coverage" ("MEC") healthcare plans to employers across the country to provide healthcare coverage to their employees. (Complaint, RE 1, ¶ 1). These plans cover basic medical services that meet the minimum coverage requirements of the Affordable Care Act and ERISA. *Id.* Employers purchasing an Apex plan establish and adopt self-funded employee welfare benefit plans to pay for medical claims through the financial contributions of the employers and its employees. *Id.*

1

The Department of Labor alleges that Apex and one of its principals, Jeffrey Bemoras, are ERISA fiduciaries with respect to Apex's healthcare plans ("Participating Plans") and that as fiduciaries they were obliged to ensure that plan assets were properly handled. *Id.* ¶ 5. In Counts One and Two—not subject to this motion—Plaintiff alleges that Apex and Mr. Bemoras breached those duties.

In Count Three ("*Causing Participating Plans to Pay Undisclosed and Excessive Compensation to Apex*"), Plaintiff alleges that Defendants charged excessive and undisclosed fees to Participating Plans in violation of ERISA's rules for fiduciaries. Plaintiff alleges that each Participating Plan pays Apex a fee of between $10 and $15 per employee per month, and that this fee is paid out of the employee and employer contributions used to fund each Participating Plan. *Id.* ¶ 47. Plaintiff alleges that Apex's fee is not disclosed to Participating Plans, the sponsoring employers, or participants. *Id.* ¶ 49.

**Argument**

## I.    Standard of Review

A Rule 12(b)(6) motion challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To be

2

plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint must allege more than "unadorned" accusations, *Ashcroft,* 556 U.S. at 678, and legal conclusions are not entitled to any presumption of truth.

District courts reviewing a motion to dismiss may consider plan documents outside the pleadings when the documents were referred to by the complaint or are central to the plaintiff's claims. *See Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009) (citing *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002)).

## II. Collecting Pre-Negotiated Premiums for Health Coverage Is Not a Fiduciary Act.

Count Three alleges that Apex violated ERISA by causing Participating Plans to pay undisclosed and excessive fees to Apex. In particular, DOL claims Defendants violated their fiduciary duties under Sections 404(a)(1)(A) and 406(b)(1) of ERISA.

Section 404(a) states:

> (1) . . . [A] *fiduciary* shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan . . . .

29 U.S.C. § 1104(a)(1). Likewise, Section 406(b) requires:

> A *fiduciary* with respect to a plan shall not—(1) deal with the assets of the plan in his own interest or for his own account . . . .

29 U.S.C. § 1106(b). Because Sections 404(a) and 406(b) both require Defendants to be fiduciaries, the threshold question is whether Defendants "w[ere] acting as a fiduciary (that is, w[ere] performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Larson v. United Healthcare Ins.*, 723 F.3d 905, 917 (7th Cir. 2013) (ERISA's functional definition of "fiduciary" means an ERISA fiduciary does not always "wear the fiduciary hat"). Defining "fiduciary," ERISA states that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Supreme Court has also made clear that fiduciary duties are context-specific, arising only to the extent a person acts in an administrative, managerial, or advisory capacity to an employee benefits plan. *See Pegram*, 530 U.S. at 225-26.

When Apex entered into contracts with employers to establish MEC plans (for which Apex received the allegedly excessive compensation), there was no existing ERISA plan—*creating* an ERISA plan was the very purpose for which such agreements were entered. Defendants could not exercise discretion or control over a plan that did not yet exist. Because there was no ERISA plan that Apex could act "with respect to" when it entered the contract entitling Apex to fees, Apex could not have been performing a fiduciary function when it entered the agreement.

4

By analogy, consider a health insurance company soliciting employers to buy one of its products.[1] Such companies are not functioning as fiduciaries when they solicit or enroll new clients in one of their health plans. Neither are they required to disclose to potential clients the portion of premiums the insurer pockets to cover internal expenses and profit. On the contrary, the health insurance company does not become a fiduciary until or unless it begins managing or administering the new plan. *See, e.g., Depot, Inc.*, 915 F.3d at 654 (insurer not fiduciary before relationship with plan exists and thus has no discretion over its management) (citing cases).

Two more points reinforce this conclusion: *First*, Apex's employer clients were also not acting as fiduciaries when they made the decision to adopt an Apex MEC plan. They were instead acting as settlors. As the Supreme Court has said, "[e]mployers . . . are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)) (internal quotations omitted). Likewise, DOL guidance states that activities relating to the formation rather than management of plans are settlor, not fiduciary, functions—such as decisions relating to the formation, design, and termination of plans—and generally are not subject to Title I of ERISA.[2] In sum, the

---

[1] E.g. www.bcbsil.com/employer/our-products/business-size/small-group.

[2] *See* www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/advisory-opinions/settlor-expense-guidance.

5

enrollment of employers in Apex MEC plans constitutes an arm's length agreement in which neither party acts as a fiduciary.

*Second*, several sister circuits have reached a similar holding: contracting for (and then later accepting) predetermined compensation is not a fiduciary act. *See, e.g.*, *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. VALIC*, 88 F.4th 602, 609 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 2525 (2024) (insurer that collected previously bargained-for compensation from plan sponsor not a fiduciary; "[a]ccepting predetermined compensation that was agreed to by a plan's named fiduciary does not constitute control over the management of a plan or disposition of the plan's assets"); *Depot, Inc.*, 915 F.3d 643 at 655 ("[T]he service provider cannot be held liable for merely accepting previously bargained-for fixed compensation.") (internal quotation marks and citation omitted); *Danza v. Fidelity Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013) (service provider not liable for accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain); *cf. Albert v. Oshkosh Corp.*, 47 F.4th 570, 584 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. 2022) ("It is circular to suggest that an entity which <u>becomes</u> a party in interest by providing services to the Plans has engaged in a prohibited transaction simply because the Plans have paid for those services.") (quoting *Sacerdote v. N.Y. Univ.*, 2017 WL 3701482, at *13 (S.D.N.Y. 2017) (emphasis added)).

The *Depot, Inc.* case is especially helpful. In *Depot*, several small employers sued health insurers whom had marketed health plans to them, alleging their insurance premiums contained hidden and excessive surcharges. The Ninth Circuit

found that the insurance companies were not acting as fiduciaries when they sold plans to employers because they were not exercising discretionary authority over plan management. Furthermore, the premiums were negotiated at arm's length and fully disclosed, even though the employers did not know about the surcharges when they bought the plans. *See Depot, Inc.*, 915 F.3d at 654-55. The panel observed that such arm's-length negotiations cannot involve plan management, because the negotiations occur before any agreement is executed, which means the insurer has no relationship to the plan and thus no discretion over its management. *Id.* at 654. "In other words, a service provider owes no fiduciary duty with respect to the negotiation of its fee compensation because nothing prevents the trustees from rejecting the provider's product and selecting another service provider; the choice is theirs." *Id.* at 655 (cleaned up) (quoting *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. (U.S.A.)*, 768 F.3d 284, 295 (3d Cir. 2014)).

Premium rates, like fixed compensation fees, are generally negotiated in "an arm's length bargain presumably governed by competition in the marketplace," *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1132 (7th Cir. 1983), meaning that the insurance company is "free to negotiate its [rates] with an eye to its profits," *Srein v. Soft Drink Workers Union, Loc. 812*, 93 F.3d 1088, 1096 (2d Cir. 1996). And this is precisely what happened here—employers contracted with Apex in an arm's-length bargain to establish their own Apex MEC plans for an agreed-upon premium, a portion of which went to Apex as compensation. (*See* **Ex. 1** at 4, 7) (example of

7

Adoption Agreement).[3] If an employer was not satisfied with Apex's offerings, it was free to purchase a health plan from one of Apex's competitors. *See generally* H. Rept. 93-1280 (Aug. 12, 1974) at 49 & n.170, 1974 WL 186650 (joint House/Senate conference report for original passage of ERISA explaining that statute's prohibited transaction provisions are intended to prohibit self-dealing, not arm's length bargains); *see also id.* at 146 (ERISA intended to protect plans "from such abuses as self-dealing" and "to provide effective remedies for breaches of trust").

Drawing all reasonable inferences in Plaintiff's favor, none of the facts pleaded establish that Defendants were acting as fiduciaries when Apex sold MEC plans to employers. Through the Adoption Agreements, employers paid pre-determined premiums, negotiated at arm's length, and Apex was compensated through those premiums. Apex was not acting in any fiduciary capacity in connection with its sale of MEC plans to employers or the negotiation of premiums, and Apex therefore could not have violated § 404(a)(1)(A) or § 406(b)(1) in connection with those premiums. Count Three should be dismissed.

---

[3] This Court may consider the Adoption Agreement without converting this Rule 12 motion to a Rule 56 motion, because the Adoption Agreements are referred to in the complaint (*see, e.g.*, ¶ 18) and are central to Plaintiff's claims. *Hecker*, 556 F.3d at 582.

## Conclusion

The Court should dismiss Count Three of Plaintiff's Complaint.

MILLER JOHNSON
Attorneys for Plaintiffs

Dated: October 7, 2024      By     */s/ D. Andrew Portinga*

           D. Andrew Portinga (P55804)
           Brett Swearingen (P85790)
Business Address:
           45 Ottawa Avenue SW, Suite 1100
           PO Box 306
           Grand Rapids, Michigan 49501-0306
Telephone: (616) 831-1700
           portingaa@millerjohnson.com
           swearingenb@millerjohnson.com

9

MJ_DMS 38284111v5 58429-1