UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, | Case No. 1:24-cv-3609 |
| Plaintiff, | |
| v. | Hon. Robert W. Gettleman |
| APEX MANAGEMENT GROUP I, INC. and JEFFREY BEMORAS, | |
| Defendants. | |

Benjamin R. Salk
Stephanie S. MacKenzie
U.S. DEPARTMENT OF LABOR
Office of the Solicitor
230 S. Dearborn Street, Room 844
Chicago, Illinois 60604
(312) 886-5260
salk.benjamin.r@dol.gov
mackenzie.stephanie.s@dol.gov

*Attorneys for Plaintiff*

D. Andrew Portinga (P55804)
Brett Swearingen (P85790)
MILLER JOHNSON
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI 49503
(616) 831-1700
portingaa@millerjohnson.com
swearingenb@millerjohnson.com

David Alan Belofsky
DAVID A. BELOFSKY & ASSOCIATES, LTD.
150 North Michigan Avenue, Suite 1230
Chicago, Illinois 60601
(312)759-3737
david@belofsky.com

*Attorneys for Defendants*

# Reply in Support of Defendants'
# Motion to Dismiss Count Three of Plaintiff's Complaint

**Table of Contents**

**Page**

Introduction .................................................................................................................. 1

Argument ...................................................................................................................... 2

      I.      Accepting Predetermined Compensation Is Not a
            Fiduciary Act. ........................................................................................... 2

      II.     DOL's Efforts to Import Other Alleged Fiduciary Breaches
            into Count Three Do Not Stand Up to Scrutiny....................................... 3

      III.    Amending Count Three of the Complaint Would be Futile..................... 6

Conclusion .................................................................................................................... 7

**Introduction**

In Count 3, the Department of Labor alleges that Apex breached its fiduciary duties by "causing Participating Plans to pay undisclosed and excessive compensation to Apex." But Apex's compensation is based on contracts it signed with its new employer clients and the TPAs who administered those employers' plans, and the DOL concedes that Apex was not acting as a fiduciary when it negotiated and executed those contracts—especially in regards to ERISA plans that did not yet exist. DOL Br. 2 & 6. Furthermore, the contracts did not provide Apex with any discretion in regards to its compensation—a fact that the DOL also does not contest.[1] Because Apex's compensation resulted from compliance with contracts negotiated at arm's length between non-fiduciaries that did not provide Apex any discretion, the receipt of such compensation is not a fiduciary breach.

The DOL attacks this conclusion by pointing to the allegations contained in Counts 1 and 2 of the Complaint concerning Defendants' alleged conduct *after* "their preliminary [and non-fiduciary] setting of contribution rates." Br. 6. DOL may wish otherwise, but Counts 1 and 2 are not part of this motion, and in moving to dismiss Count 3 Defendants are not asking the Court to "bless" any conduct or otherwise "forever protect" them from liability for DOL's other allegations. Br. 2. Defendants merely ask the Court to dismiss a claim for fiduciary breach where it is not disputed

---

[1] For the purposes of this motion only, Defendants accept all well-pleaded allegations as true, as they must under Rule 12.

1

that the actions in question—the only actions that "caused" Apex to receive compensation—were "settlor functions, not fiduciary ones."  Br. 6.

## Argument

### I.    Accepting Predetermined Compensation Is Not a Fiduciary Act.

The "Minimum Essential Coverage" ("MEC") healthcare plans that Apex creates and sells to employers ("Participating Plans") are established through an Adoption Agreement signed by a representative of the sponsoring employer and by Apex.  Compl. ¶ 18.  These Adoption Agreements contain an agreed-upon premium rate for the Plan.  *See* Apex Br. 7-8. The premiums for each Plan are used to pay health claims, along with the fees for the Plan's TPA, Apex, and the Plan's other service providers.  DOL Br. 4; Compl. ¶¶ 25-26, 20, 2.  DOL has not alleged that either the Adoption Agreements or the administrative service agreements with the TPAs provided Apex with any discretion with regard to its compensation.  DOL has even acknowledged that Participating Plans' "[c]ontribution rates do not vary based on participant or employer."  Compl. ¶ 24.

DOL concedes that Defendants "[did] not act as fiduciaries when they initially design[ed] the health care plans and set the rates that participants and their employers pay for coverage."  Br. 2.  But DOL must also concede that Apex's design of the Participating Plans did not allow it to exercise any discretion with regard to its collection of fees.   Those fees were determined by contract, and "accepting predetermined compensation does not constitute a fiduciary act."   *Markham v.*

2

*VALIC*, 88 F.4th 602, 609 (5th Cir. 2023); *see also* Apex Br. 6-7 (citing additional cases).

## II. DOL's Efforts to Import Other Alleged Fiduciary Breaches into Count Three Do Not Stand Up to Scrutiny.

Despite conceding that accepting predetermined compensation does not subject an entity to fiduciary liability, the DOL argues that Apex "caused" this predetermined compensation based on other fiduciary breaches alleged in Counts 1 and 2 of DOL's Complaint—even though these other allegations relate to the administration of the Participating Plans rather than Apex's compensation.

DOL's theory fails. Even if the allegations of Counts 1 and 2 are correct, Apex was still not acting as a fiduciary when it signed the Adoption Agreements. Furthermore, Apex's compensation was not "caused" by any of its actions following the establishment of Participating Plans, DOL Br. 2; Apex was entitled to the compensation once the Adoption Agreements were signed.

Plaintiff argues that Counts 1 and 2's allegations of Apex's discretionary authority over the management of Participating Plans distinguish this case from the holding of *Markham*. Br. 8. In *Markham*, the court adopted the reasoning of an earlier Fifth Circuit case, which held that an arms-length negotiation does not absolve a defendant from liability for excess compensation when "his rate of compensation [is] <u>directly linked</u> to his discretionary activities." *Am. Fed'n of Unions Loc. 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 663 (5th Cir. 1988) (emphasis added) (cited in *Markham*, 88 F.4th at 609); *see also Tiblier v. Dlabal*, 743 F.3d 1004, 1008-09 (5th Cir. 2014) (liability requires

3

showing more than defendant "acted in a general fiduciary capacity"; plaintiff must show defendant exercised that authority with regard to the issue complained of). In *American Federation of Unions*, a plan administrator's compensation was contractually set at 12% of claims paid. The plan administrator had forged 1,350 applications to switch participants in a welfare fund from term life to whole life insurance policies, whose monthly premiums were twice as large, and had also extended health coverage to non-covered persons, driving up insurance claims. 841 F.2d at 661. Finding that the plan administrator's compensation increased with every insurance claim paid, and that he had exercised unilateral discretion over which claims would be paid, the Fifth Circuit panel held that the direct link between the administrator's compensation and his discretionary activities made the administrator a fiduciary with respect to his compensation. *Id.* at 661-63.

Here, by contrast, even accepting all the allegations of Counts 1 and 2 as true, there is no "direct[] link" between Defendants' alleged discretionary actions and Apex's compensation. None of the actions alleged by DOL would have had an effect on Apex's compensation, as did the administrator's conduct in *American Federation of Unions*. For there to be such a "direct[] link," Apex would have needed the ability to unilaterally increase its fees, Compl. ¶ 47, or unilaterally switch its employer clients into higher-priced products (for which Apex received higher fees). But Apex did not have the ability to do any of those things—both options were foreclosed by the adoption agreements, and DOL has not alleged otherwise.

4

Neither did Apex have the ability to "unilaterally encumber a plan's assets," as DOL alleges in its discussion of the recent *Su v. BCBSM, Inc.* case. Br. 10. On the contrary, Apex's compensation is a result of bilateral agreements with employer plan sponsors and the TPAs. Apex does not "cause the TPAs to pay them fees," *id.*; Apex cannot unilaterally "cause" the TPAs to pay it anything. The rights and obligations of both parties are governed by their contract.

Neither is DOL's reimagining of the *Depot, Inc.* case persuasive. Br. 11. Like the defendants in that case, Apex did not "exercise control over plan assets when charging or spending the allegedly excessive premiums." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 659 (9th Cir. 2019). Neither Apex, the TPAs, or the other service providers to the plans had any discretion or control under the respective administrative service agreement with regards to compensation. All received fixed, predetermined fees pursuant to the contract.

But more to the point, *Depot, Inc.* precisely contemplated—and rejected—the core argument the DOL makes in its response brief. In a case where the defendant insurer had been fined by the state insurance commissioner for excessive billing and the payment of kickbacks, *id.* at 651, the Ninth Circuit held that it *does not matter* if a defendant acquires fiduciary status *after* entering into an initial contract involving compensation, because such later-acquired fiduciary status cannot transform the non-fiduciary nature of receiving fixed, predetermined fees into a fiduciary activity:

> . . . plaintiffs [*like DOL here*] argue that defendants did exercise discretion after the contracts were executed by virtue of their "decision to continue charging inflated amounts, when [they] held complete and unilateral

5

> authority to eliminate those overcharges." . . . Once defendants agreed to enter into a contract with plaintiffs, <u>defendants may have acquired fiduciary status with respect to some plan functions</u>, *see, e.g.*, *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 745–46 (9th Cir. 2017), but <u>any fiduciary status defendants may have acquired did not compel defendants to renegotiate the premium rates they had just agreed to accept</u>. Rather, defendants were "merely accepting previously bargained-for" premiums, and the bargaining itself did not give rise to fiduciary status. *Santomenno*, 883 F.3d at 840. Thus, in allegedly charging and collecting excessive premiums—which is "the action subject to [plaintiffs'] complaint," *Pegram*, 530 U.S. at 226, 120 S.Ct. 2143—defendants were not exercising discretionary authority over plan management.

*Depot, Inc.*, 915 F.3d at 657 (emphasis added) (cleaned up). In diametric opposition to the bulk of DOL's brief, *Depot, Inc.* holds that the allegations of fiduciary misconduct in Counts 1 and 2 are simply irrelevant to DOL's claims in Count 3. Instead, the non-fiduciary nature of Apex and the TPAs' "previously bargained-for" compensation ends the analysis.

For the same reasons as provided above, the DOL's prohibited transactions argument fails as well. Br. 12. Apex and the service providers did not "deal" with the assets of Participating Plans when they received compensation; they were obtaining compensation due under a contract. The idea that Apex was "unilaterally determin[ing] whether to collect a fee and determin[ing] the rate at which it would collect the fee," *id.* (cleaned up), is wrong as a matter of law. Apex did not determine its compensation; its compensation was set by the contract.

## III.   Amending Count Three of the Complaint Would be Futile.

DOL should not be granted leave to amend its Complaint, because any amendment would be futile. There is no dispute that Apex was not a fiduciary at the

time it entered into contracts with employer plan sponsors and the TPAs, which resulted in Apex receiving compensation. The only dispute is whether subsequent conduct by Defendants alleged by DOL could have given rise to fiduciary violations with respect to that compensation. Plaintiff has fully briefed that argument here, and has done so after a multiyear investigation that provided it with abundant opportunity to draft a detailed Complaint. Rather than allowing Plaintiff to pursue redundant allegations for a second time, the Court should instead require DOL to move forward with litigating Counts 1 and 2.

## Conclusion

Plaintiff acknowledges that Defendants were not acting as fiduciaries when Apex sold MEC plans to employers. Through the Adoption Agreements, employers paid pre-determined premiums, negotiated at arm's length, and Apex and the service providers were compensated through those premiums. Because accepting pre-determined compensation is not a fiduciary act, Count 3 of Plaintiff's Complaint should be dismissed.

MILLER JOHNSON
Attorneys for Plaintiffs

Dated: November 21, 2024

By  /s/ D. Andrew Portinga

D. Andrew Portinga (P55804)
Brett Swearingen (P85790)
Business Address:
45 Ottawa Avenue SW, Suite 1100
PO Box 306
Grand Rapids, Michigan 49501-0306
Telephone: (616) 831-1700
portingaa@millerjohnson.com
swearingenb@millerjohnson.com

7

MJ_DMS 38460991v5 58429-1